**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ATHALONZ, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 1:24-mc-00047 |
| | § | |
| v. | § | CASE IN OTHER COURT: |
| | § | 2:23-CV-00193-JRG (E.D. Tex.) |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant.* | § | |

## NON-PARTY BRYCE HARPER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH PLAINTIFF ATHALONZ, LLC'S SUBPOENA

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................**Error! Bookmark not defined.**

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**Error! Bookmark not defined.**

    A.  The Bryce Harper Footwear at Under Armour .................**Error! Bookmark not defined.**

    B.  Procedural History of the Underlying Action ...................**Error! Bookmark not defined.**

    C.  Discovery Remains at an Early Stage ...............................**Error! Bookmark not defined.**

III. ARGUMENT .........................................................................**Error! Bookmark not defined.**

    A.  Legal Standard ...............................................................**Error! Bookmark not defined.**

    B.  Mr. Harper Does Not Uniquely Possess Any Relevant Information**Error! Bookmark not defined.**

    C.  The Subpoena Should be Quashed as it Imposes an Undue Burden on Non-Party Harper ...............................................................................**Error! Bookmark not defined.**

        1.  Sitting for Deposition Would Be Burdensome for Mr. Harper**Error! Bookmark not defined.**

        2.  The Requests for Production of Documents Are Overbroad**Error! Bookmark not defined.**

IV. CONCLUSION .......................................................................**Error! Bookmark not defined.**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Props.*,
No. 08-CV-10934 (KBF), 2013 U.S. Dist. LEXIS 202393 (S.D.N.Y. Aug. 28, 2013) ..................................................................................................................................7

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) ...........................................................6, 10, 12, 14

*Arista Records LLC v. Lime Group LLC*,
No. 06-CV-5936 (KMW), 2011 U.S. Dist. LEXIS 20709 (S.D.N.Y. Mar. 1, 2011) ..............................................................................................................7, 12

*Burns v. Bank of Am.*,
No. 03-CV-1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037 (S.D.N.Y. June 4, 2007) ...................................................................................8, 12, 13, 15

*Citizens Union of New York v. Att'y Gen. of New York*,
269 F. Supp. 3d 124 (S.D.N.Y. 2017) .................................................................7, 12

*Fishon v. Peloton Interactive, Inc.*,
336 F.R.D. 67 (S.D.N.Y. 2020) ........................................................................8, 12, 15

*Frates v. Pantry Pride, Inc.*,
No. M8-85, 1985 U.S. Dist. LEXIS 1561 (S.D.N.Y. Sept. 25, 1985) ......................7

*Jones v. Hirschfeld*,
219 F.R.D. 71 (S.D.N.Y. 2003) ...............................................................................12

*Kirschner v. Klemons*,
No. 99-CV-4828 (RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005)...................9

*Meier v. UHS of Del., Inc.*,
No. 18-CV-00615, 2021 WL 1226619 (E.D. Tex. Apr. 1, 2021)............................7, 8, 12, 14

*SEC v. Archer*,
No. 16-CV-3505, 2018 U.S. Dist. LEXIS 110260 (S.D.N.Y. July 2, 2018) ......................8, 13

*SEC v. Rayat*,
No. 21-CV-4777 (LJL), 2023 WL 5276544 (S.D.N.Y. Aug. 16, 2023)...................6

*Silverstein v. Penguin Putnam, Inc.*,
No. 01-CV-309 (JFK), 2006 WL 2506363 (S.D.N.Y. Aug. 29, 2006) ....................6

*Under Armour, Inc. v. Battle Fashions, Inc*.,
   No. 18-MC-80117-LB, 2018 U.S. Dist. LEXIS 130983 (N.D. Cal. Aug. 3,
   2018) ........................................................................................................................ *passim*

## I.     <u>INTRODUCTION</u>

The movant, Bryce Harper ("Mr. Harper") is not a party to this litigation; rather he is a famous professional athlete who plays baseball for the Philadelphia Phillies.  Mr. Harper has been subpoenaed by Plaintiff Athalonz, LLC ("Athalonz"), demanding both documents and deposition testimony in short order, despite that Mr. Harper lacks knowledge and information relevant to the case and that any potentially relevant information and documents are more readily and properly obtained directly from a party to the litigation, Defendant Under Armour Inc. ("Under Armour"). In accordance with Rule 45, the Court should quash Plaintiff's Subpoena and protect Mr. Harper from unnecessary burden.

The underlying case brought by Athalonz is a patent dispute involving certain Under Armour athletic shoes, including a line of baseball shoes sponsored by Mr. Harper.  The claims and defenses at issue center on Under Armour's alleged infringement of Athalonz's patents—an issue of fact about which Mr. Harper can provide no relevant testimony or documents.  Rather, the issue of infringement depends on specific design features of the soles of the accused shoes, including whether the soles have specific angular features or materials of differing compressibility in a particular arrangement.  Mr. Harper's role as an Under Armour product sponsor is entirely unrelated to these issues.

Athalonz has already identified five different Under Armour employees and past employees as witnesses it believes have relevant knowledge relating to the asserted patents and accused products.  Under Armour has also identified several additional employees as likely trial witnesses who have information pertaining to: (1) the design and development of the accused Harper products; (2) marketing of the accused Harper products; and (3) sales of the accused Harper products.  Under Armour has also agreed to produce all design and technical documents for the accused products; all development documents for the accused products; all promotional documents

1

for the accused products; all testing documents for accused products; sales and profit data for accused products; and all documents related to the Mr. Harper's involvement in the design, development, or testing of the accused features of the accused products.

Athalonz has not, and cannot, establish that Mr. Harper's testimony or documents are relevant to this case. Athalonz simply has no legitimate basis to subpoena Mr. Harper.

Courts recognize that discovery on non-parties is circumscribed and will quash discovery that is irrelevant, unreasonable, duplicative, harassing, or that can be obtained from some other source that is more convenient. The Subpoena should be quashed for each of these reasons. For example, the Subpoena's document requests encompass broad, sweeping categories of documents that are not limited in time or scope—*e.g.*, Request No. 3 seeks production of every document or communication that relates to Mr. Harper's role in marketing, advertising, or promoting the accused Harper products, and Request No. 7 seeks production of every communication that relates to Mr. Harper's role as a sponsor of the accused Harper products. Such requests are facially overbroad. Furthermore, to the extent the Subpoena requests any documents relevant to the issues in this litigation, Athalonz cannot show that those documents are not also in the possession of Under Armour, such that they are not unreasonably duplicative for Mr. Harper to search and produce.

Likewise, the deposition Athalonz seeks of Mr. Harper is improper. There is nothing relevant to this litigation that Mr. Harper could tell Athalonz that Under Armour's witnesses cannot provide. Mr. Harper lacks unique personal knowledge of any material facts in the underlying action, including facts relating to the allegedly infringing design of the accused products. The burden to Mr. Harper, a non-party witness, of disrupting his demanding schedule to prepare for and attend a deposition on patent infringement issues of which he has no knowledge is unjustified,

as any information that Mr. Harper may have about the design and promotion of the accused Harper shoes is more readily and properly obtained directly from Under Armour—the party that designed, promotes and sells such products.

For these reasons and the reasons set forth below, the Court should grant Mr. Harper's motion to quash.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Bryce Harper Footwear at Under Armour

Under Armour is a well-known athletic brand that develops, markets, and distributes branded performance apparel, footwear and accessories for men, women and youth.  Declaration of Spencer Hawkins ("Hawkins Declaration"), ¶ 3.  Mr. Harper is a world-renowned professional MLB player who plays for the Philadelphia Phillies.  Mr. Harper is not an owner, officer, director or employee of Under Armour.

Under Armour employees, not Mr. Harper, propose, design, develop, promote, and sell the Under Armour footwear that is marketed in connection with Bryce Harper by Under Armour. Hawkins Declaration, ¶ 4; Declaration of Michael Fiore ("Fiore Declaration"), ¶ 4.  Under Armour also oversees and manages the manufacturing and production of all Under Armour footwear related to Bryce Harper.  Fiore Declaration, ¶ 4.  Mr. Harper had no involvement in the design or development of the specific features of the Harper products accused of infringement, *i.e.* the shape, construction or technical aspects of the soles of the accused Harper products, or the materials used in the soles of the accused Harper products. *Id.*, ¶¶ 5-6; Hawkins Declaration, ¶¶ 5-6.  Rather, Mr. Harper's involvement was limited to providing feedback about cosmetic aspects of the accused Harper products, including his preference on certain colorway schemes, and his experience wearing the footwear.  Fiore Declaration, ¶ 5.

**B.     Procedural History of the Underlying Action**

On April 26, 2023, Athalonz filed an action against Under Armour alleging infringement of the Asserted Patents, *Athalonz, LLC v. Under Armour, Inc.*, Case No. 2:23-cv-00193-JRG, in the United States District Court for the Eastern District of Texas (the "Action").  Declaration of Robert E. Bugg ("Bugg Declaration"), ¶¶ 4-5.  Under Armour denies that it infringes the Asserted Patents and asserts that the Asserted Patents are invalid.  *Id.*, ¶ 6.  The case is in its early stages. Discovery has just begun, and the parties recently served infringement contentions and invalidity contentions on September 14, 2023, and November 30, 2023, respectively.  *Id.*, ¶ 15.  The deadline for the parties to substantially complete document production is not for another six months (August 7, 2024), with the *Markman* hearing scheduled in September 2024, close of fact discovery in October 2024, and trial set to occur in March 2025.  *Id.*

On January 9, 2024, Mr. Harper's counsel agreed to accept service of the Subpoena.  The Subpoena included requests for production of documents on January 29, 2024, and noticed Mr. Harper's deposition for February 5, 2024, in New York.  *Id.*, ¶ 8.

**C.     Discovery Remains at an Early Stage**

Athalonz seeks to obtain intrusive and burdensome discovery from non-party Mr. Harper despite having requested—and obtaining—the same information from Under Armour.  Under Armour has already agreed to produce extensive categories of documents that Athalonz requested. More specifically, Under Armour has agreed to produce, and has produced:

> ➢   all technical documents, CAD files and specifications for the accused products;
>
> ➢   all marketing and promotional documents for the accused products;
>
> ➢   all development documents for the accused products;
>
> ➢   all testing documents for accused products;
>
> ➢   all sales and profit data for accused products; and

> ➤ all documents related to Mr. Harper's involvement in the design, development, or testing of the accused features of the accused products.

*Id.*, ¶ 10.

With respect to testimony, Athalonz has yet to seek a single individual or 30(b)(6) deposition from Under Armour, despite having knowledge of at least eight current and former Under Armour employees in possession of facts relevant to the claims in the underlying Action:[1]

> ➤ Kevin Culley (former Director of Innovation)
>
> ➤ Don Gibadlo (Director of Footwear Development)
>
> ➤ David Stakel (Senior Director – Team Sports Footwear)
>
> ➤ Joshua Rattet (VP of Team Sports Footwear, Accessories and Equipment Business Units)
>
> ➤ Craig Foster (Director of Corporate Development)
>
> ➤ Spencer Hawkins (Senior Design Lead, Footwear, Field Sports relating to baseball)
>
> ➤ Teresa Oles (Vice-President, Consumer Operations)
>
> ➤ Katie Fink (Director, FP&A)

Collectively, Under Armour and the above witnesses are in possession of documents and information rendering any information that Mr. Harper may be able to provide duplicative and unnecessary.

---

[1] Athalonz has known that Mr. Culley, Mr. Gibadlo, Mr. Stakel, Mr. Rattet and Mr. Foster may be in possession of relevant information since at least April 26, 2023, when it identified them by name in its original Complaint in the underlying Action. Athalonz has further known that Mr. Hawkins, Ms. Oles, and Ms. Fink are in possession of relevant information and are likely to be called to testify as trial witnesses since at least August 30, 2023, when Under Armour identified them in its motion to transfer venue to the District of Maryland, and additionally since October 19, 2023, when Under Armour identified them in its initial disclosures.

III.   **ARGUMENT**

The Subpoena "imposes an undue burden and expense" on Mr. Harper, a non-party who has a busy and demanding schedule, and who is at the pinnacle of his professional career. The disruption it would cause Mr. Harper vastly outweighs any information that he may possess regarding Under Armour's shoe designs, and the proposed deposition is very unlikely to reveal testimony that is material to the parties' claims or defenses. The Subpoena's demands are also disproportional to the needs of this case, as any information that Mr. Harper may have about the accused shape and materials of the accused shoe soles is more readily and properly obtained directly from Under Armour, through a Rule 30(b)(6) witness, or otherwise. As such, the deposition serves no legitimate discovery purpose.

A.   **Legal Standard**

Parties may not use discovery as a strategic tool to harass, burden, or otherwise gain improper advantages in litigation. The "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules," including Federal Rule of Civil Procedure 26(b). *Silverstein v. Penguin Putnam, Inc.*, No. 01-CV-309 (JFK), 2006 WL 2506363, at *2 (S.D.N.Y. Aug. 29, 2006) (quoting Fed. R. Civ. P. 45 advisory committee's note). Rule 26 requires courts to limit discovery methods where:

    (i)      the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity by discovery in the action; or

    (iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*SEC v. Rayat*, No. 21-cv-4777 (LJL), 2023 WL 5276544, at *1 (S.D.N.Y. Aug. 16, 2023) (citing Fed. R. Civ. P. 26(b)(2)); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Frates v. Pantry Pride, Inc.*, No. M8-85, 1985 U.S. Dist. LEXIS 1561, at *2 (S.D.N.Y. Sept. 25, 1985) (district court may quash an unreasonable or oppressive subpoena). Additionally, "within [the Second] Circuit, courts have held nonparty status to be a 'significant' factor in determining whether discovery is unduly burdensome." *In re 650 Fifth Ave. & Related Props.*, No. 08-CV-10934 (KBF), 2013 U.S. Dist. LEXIS 202393, at *16 (S.D.N.Y. Aug. 28, 2013); *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) (the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

The "undue burden" in Rule 45(d)(3)(A)(iv) is a case specific inquiry and balances the need of the subpoenaing party for the information and burden on the non-party. *Citizens Union of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). Specifically, to determine whether a subpoena poses an undue burden, courts consider factors such as relevance, the need of the party for the documents, and the hardship imposed on the third party. *Id.*; *see also Meier v. UHS of Del., Inc.*, No. 18-CV-00615, 2021 WL 1226619, at *6 (E.D. Tex. Apr. 1, 2021). When documents are sought, courts also consider the breadth of the document requests, the time period covered by them, and the particularity with which the documents are described. *Citizens Union of New York*, 269 F. Supp. 3d at 138; *Meier*, 2021 WL 1226619, at *6. Courts should be "particularly sensitive" when balancing the relevance and probative value of a particular discovery

request against the burden of production, and give "special weight" to the burden on non-parties of producing documents to parties involved in litigation. *Arista Records LLC v. Lime Group LLC*, No. 06-CV-5936 (KMW), 2011 U.S. Dist. LEXIS 20709, at *9-10 (S.D.N.Y. Mar. 1, 2011) (citations omitted). Moreover, subpoenas pose an undue burden when they are "facially overbroad." *Meier*, 2021 WL 1226619, at *6 (explaining that "[f]acially overbroad subpoenas include those that seek all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless of date; the requests are not particularized; and the period covered by the requests is unlimited") (internal revisions and quotations omitted).

Courts must also consider "whether the requested information can be obtained from the parties themselves." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020). "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, No. 03-CV-1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, at *46 (S.D.N.Y. June 4, 2007) (quashing subpoena on non-party that sought documents duplicative of those requested from defendant). "If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45." *Id.* (citation, internal quotations, and alterations omitted).

Even where the burden upon the proposed deponent is not excessive or unusual, a lack of relevance of the information sought may be independently determinative, mandating that a non-party subpoena be quashed, as it is axiomatic that a party may only obtain discovery of information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The burden is on the party seeking the deposition to demonstrate the relevance of the expected testimony of the putative

witness. *SEC v. Archer*, No. 16-cv-3505, 2018 U.S. Dist. LEXIS 110260, at *3 (S.D.N.Y. July 2, 2018) (citation omitted). A subpoena that "pursues material with little apparent or likely relevance to the subject matter" is "likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons*, No. 99-CV-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).

**B.      Mr. Harper Does Not Uniquely Possess Any Relevant Information**

Athalonz has no legitimate reason for deposing Mr. Harper. Mr. Harper has not been retained by Under Armour for any purpose related to this Action, and Under Armour does not intend to offer Mr. Harper as a witness at trial. Mr. Harper has no involvement with this litigation.

Athalonz can depose numerous Under Armour witnesses who have worked with Mr. Harper and his team since the beginning of Mr. Harper's relationship with Under Armour. Indeed, Athalonz has known these witnesses' identities for months prior to serving the Subpoena. *See* Section II.C, *supra*. And Under Armour's witnesses possess knowledge of the extent of Mr. Harper's involvement in the design, development, testing, marketing, advertising, promotion, and sale of the accused products, if any.

In this Action, Athalonz must prove that Under Armour makes, uses, offers to sell, or sells products that infringe Athalonz's patents. *See* 35 U.S.C. § 271. Athalonz must also prove that it is entitled to damages. *See* 35 U.S.C. § 284. The material sought by the Subpoena is neither relevant, nor targeted, to these issues. For example, with respect to Request No. 2, Mr. Harper plays no role in the design or development of the accused features of the accused products (*i.e.*, the shape and materials of the shoe sole). Fiore Declaration, ¶¶ 5-6; Hawkins Declaration, ¶¶ 5-6. Nor is testimony from Mr. Harper regarding his involvement with the accused products relevant to the issues in this Action. In a similar case involving alleged trademark infringement by professional basketball player Stephen Curry's ("Mr. Curry") line of Under Armour products, the

Northern District of California granted a motion to quash a similar subpoena to Mr. Curry.  *Under Armour, Inc. v. Battle Fashions, Inc*., No. 18-mc-80117-LB, 2018 U.S. Dist. LEXIS 130983 (N.D. Cal. Aug. 3, 2018).  There, the subpoena to Mr. Curry requested, *inter alia*, documents relating to Mr. Curry's "participation in the collaborative effort between Under Armour and Steph Curry in the development, design, sale, or promotion" of the allegedly infringing products.  *Id*. at *5.  When quashing the subpoena, the Northern District of California held that "discovery about Mr. Curry's involvement in the design of Under Armour products is at best of marginal relevance," noting that, like here, "Under Armour is the one that is selling whatever products that Mr. Curry may or may not have designed, and it is Under Armour against whom [Plaintiff] is litigating…."  *Id*. *9

Similarly, in *Amini Innovation*, actress Jane Seymour who was identified as a "co-designer" of Plaintiff Amini's Hollywood Swank Bedroom Collections, successfully moved to quash her deposition subpoena.  300 F.R.D. at 408.  Plaintiff's furniture collection was the basis of trade dress contentions in the action, and Seymour appeared in advertisements for the Collections and promoted them on her website.  *Id.*  The court's decision to quash the celebrity's subpoena in *Amini* is instructive, finding:

> [E]ven if the record showed that Seymour had more involvement in the creation of the Collections, *it appears unlikely that evidence about her inspirations in the design process would be directly relevant to this trade dress action* . . . . [as] trade dress litigation involves an examination of a design's functionality, secondary meaning, and likelihood of confusion with the public . . . [and the Plaintiff] has not shown that Seymour is likely to possess information about these specialized topics. *The type of information Seymour may possess about the inspiration for a given design appears marginal to the issues in this action*, such as what the design actually is (regardless of its source), and how it is presented to and received by the public. Seymour is not an obvious witness to ask about survey evidence or the amount of Amini's sales and the number of Amini's customers. *Even if Seymour were somehow qualified to testify about these topics, any information Seymour could likely offer would seemingly be cumulative of the testimony of Amini witnesses versed in the technicalities of trade dress protection and litigation.* In addition, [Plaintiff] has not shown that Seymour even knows that [Plaintiffs]

products exist, much less that she has any information or opinions bearing on whether [Plaintiff's] products infringe on Amini's trade dress.

*Id.* at 412 (emphases added).

The same is true here. Mr. Harper does not have unique personal knowledge of material facts bearing on whether the ***accused features*** of the Harper products infringe the asserted patent claims. Nor does Mr. Harper have unique personal knowledge as to specific marketing, advertising, promotion or sale of the Harper products that could bear on Athalonz's damages theories. Athalonz can and has learned about Under Armour's design, development, marketing, promotion and sales processes from Under Armour's documents and from deposing Under Armour's witnesses.

With respect to Request Nos. 1-2, Mr. Harper has explained that he is unaware of any responsive documents within his possession. Fiore Declaration ¶ 7, Bugg Declaration ¶ 7. Additionally, with respect to Request Nos. 3-6 generally, Mr. Harper lacks knowledge material to the underlying Action regarding: (1) the marketing, advertising and promotion of the accused products; (2) the comparative value or benefits of the accused products compared to other shoes; (3) the market for baseball shoes generally; and (4) Under Armour's pricing, margins, costs, sales strategies, or sales comparisons. Bugg Declaration ¶ 7. Mr. Harper was also never asked to provide, and never did provide, any design suggestions or feedback to Under Armour regarding the accused features of the accused Harper products, or any potential benefits regarding those features. Fiore Declaration, ¶ 6.

Even setting aside the minimal potential relevance to Athalonz's damages theories in the underlying Action,[2] to the extent Mr. Harper is in possession of such information, the same can be

---

[2] *See e.g., Battle Fashions*, 2018 U.S. Dist. LEXIS 130983 at *12 (finding Mr. Curry's involvement in the marketing and promotion of Under Armour products and Mr. Curry's contract with Under Armour irrelevant to claims or defenses in the litigation).

obtained from Under Armour.  Bugg Declaration, ¶¶ 7, 9-14.  Athalonz cannot show that any information Mr. Harper might have about those topics is not also in the possession of Under Armour, the company actually engaged in designing, advertising, selling and accounting for the accused products.

Mr. Harper should not be burdened with the third-party Subpoena when there is no indication that his responses would be materially relevant, especially when Athalonz has other means to obtain the same information from parties and other witnesses which it has yet to explore. *See, e.g.*, *Battle Fashions,* 2018 U.S. Dist. LEXIS 130983, at *9 (holding that discovery sought from Under Armour sponsored athlete Stephen Curry "is of little benefit compared to the burden on him and is cumulative or duplicative of discovery that Mr. Battle can or has obtained from Under Armour and other sources"); *Burns*, 2007 U.S. Dist. LEXIS 40037, at *46 (quashing subpoena on non-party that sought documents duplicative of those requested from defendant); *Fishon*, 336 F.R.D. at 69.

**C.  The Subpoena Should be Quashed as it Imposes an Undue Burden on Non-Party Harper**

The burden on Mr. Harper far outweighs Athalonz's need for the information sought by the Subpoena.  *See Battle Fashions*, 2018 U.S. Dist. LEXIS 130983, at *9 (granting motion to quash similar Curry subpoena as unduly burdensome); *Amini Innovation Corp.*, 300 F.R.D. at 411-13 (granting non-party actress's motion to quash); *Meier*, 2021 WL 1226619, at *6.

Courts have broad discretion to determine whether a subpoena is unduly burdensome. *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).  "In assessing whether the subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party."  *Citizens Union of New York*, 269 F. Supp. 3d at 138 (quotation marks omitted).  And in weighing these factors, courts should be "particularly sensitive"

and give "special weight" to the burden on non-parties.  *Arista Records LLC*, 2011 U.S. Dist. LEXIS 20709, at *9-10.

### 1.     *Sitting for Deposition Would Be Burdensome for Mr. Harper*

Mr. Harper has extensive commitments as a professional baseball player, even during the off-season.  *See* Fiore Declaration, ¶¶ 8-9.  Mr. Harper spends many hours each day practicing, training and/or doing physical therapy during the off-season.  *Id.*, ¶ 8.  Additionally, Mr. Harper's schedule is filled with team obligations, as well as endorsement, sponsorship, and charity commitments.  *Id.,* ¶ 9.

### 2.     *The Requests for Production of Documents Are Overbroad*

The Subpoena includes requests for production of documents that are overbroad, irrelevant and duplicative.  First, to the extent the requests are relevant, the vast majority are duplicative of requests propounded to Under Armour, and to which Under Armour has agreed to produce, and has produced, responsive documents.  Bugg Declaration, ¶¶ 9 (*see, e.g.*, Request Nos. 1-6, 17-18), 10-14; *Burns*, 2007 U.S. Dist. LEXIS 40037, at *46 (quashing subpoena on non-party that sought documents duplicative of those requested from defendant).

Second, certain of the requests seek documents untethered to the claims and defenses in the Action.  For instance, the Subpoena seeks "all documents or communications that describe or refer to the market for baseball shoes in the United States."  Bugg Declaration, ¶ 8 (*see, e.g.*, Request No. 5).  And regarding Request No. 7, Athalonz has failed to provide any legal authority supporting the relevance of Mr. Harper's sponsorship agreements with Under Armour, despite numerous requests from Under Armour to provide it.  Bugg Declaration, ¶¶ 10, 12, 14; *Archer*, 2018 U.S. Dist. LEXIS 110260, at *3 ("The party issuing the subpoena bears the burden to show relevance."); *see also Battle Fashions*, 2018 U.S. Dist. LEXIS 130983, at *12 (quashing subpoena

requesting, *inter alia*, contracts between Stephen Curry and Under Armour regarding his promotion of Under Armour products accused of infringement).

Third, Athalonz's requests are facially overbroad.  For example, Request No. 1 seeks all documents relating to a party to the underlying Action.  And each request is overbroad for failure to be time-limited to a period relevant to the underlying Action.  This facially overbroad Subpoena imposes an undue burden on Mr. Harper.  *See, e.g.*, *Meier*, 2021 WL 1226619, at *6 ("Facially overbroad subpoenas include those that seek all documents concerning the parties to the underlying action . . . [and those where] the time period covered by the requests is unlimited.").

Finally, the Subpoena seeks attorney-client privileged information outside the scope of permissible discovery.  For example, Request No. 8 seeks documents and communications between Mr. Harper and Under Armour or Venable LLP, the firm representing both Under Armour and Mr. Harper, relating to the Litigation.  Fed. R. Civ. P. 26(b)(1) ("the scope of discovery" is limited to "**nonprivileged** matter that is relevant to any party's claim or defense") (emphasis added).

The *Battle Fashions* and *Amini* decisions are also instructive in the undue burden analysis. In *Battle Fashions*, the court agreed with Mr. Curry that a subpoena of similar scope was unduly burdensome where the "discovery [was] not related to Mr. Battle's trademark dispute with Under Armour," was "overbroad," was "cumulative or duplicative of discovery that Mr. Battle can or has obtained from Under Armour and other sources," and "of little benefit compared to the burden on him."  2018 U.S. Dist. LEXIS 130983, at *9-12.  And just like here, that subpoena was served during the sport's off-season.

Likewise, in *Amini*, the court quashed an unduly burdensome subpoena to the celebrity non-party, Seymour, because the "value of Seymour's testimony in [a] trade dress action appears

to be low or at best unknown" and the information sought is "obtainable—and for many topics, likely uniquely obtainable—from Amini and its officers." *Id.* at 411.

This Court should quash the Subpoena for the same reasons.  The discovery sought is overbroad and unrelated to the dispute; Mr. Harper lacks personal knowledge of the facts relevant to the claims and legal contentions in the Action including, *inter alia*, whether the accused shape and materials of the shoe soles infringe Athalonz's patents; and any documents or information Mr. Harper has about the allegedly infringing features of the accused products, to the extent they exist, is more readily and properly obtained directly from Under Armour.

There is little, if any, benefit to the Subpoena.  This is especially true considering that Athalonz has sought the same materials and information from Under Armour, and Under Armour has agreed to produce, and has produced, the materials relevant to the dispute.  *See Burns*, 2007 U.S. Dist. LEXIS 40037, at *46 (quashing subpoena on non-party that sought documents duplicative of those requested from defendant); *Fishon*, 336 F.R.D. at 69.  As such, the motion to quash should be granted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Mr. Harper respectfully requests that the Court grant this Motion and quash the Subpoena.

VENABLE LLP

By: <u>*s/ Robert E. Bugg*</u>
Robert E. Bugg
Email: rebugg@Venable.com
151 West 42nd Street
New York, NY 10036
212.370.6241
212.307.5598 – Facsimile

Frank C. Cimino, Jr. (*pro hac motion pending*)
Email: fccimino@Venable.com

Megan S. Woodworth (*pro hac motion
pending*)
Email: mswoodworth@Venable.com
600 Massachusetts Avenue, NW
Washington, DC  20001
202.344.4569
202.344.8300 – Facsimile

*Attorneys for Non-Party Bryce Harper*